# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 17-284 |
| MICHAEL MILCHIN | : | |

## GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

Defendant Michael Milchin was the organizer and leader of a massive drug conspiracy that poured hundreds of thousands of highly potent oxycodone pills onto the street.   From approximately May 2012 until approximately March 2015, the defendant conspired with several individuals, including his co-defendants in this case, to fill hundreds of fraudulent prescriptions for controlled substances, namely oxycodone and, to a lesser extent, morphine sulfate, for the purpose of redistribution to others, including street-level dealers.   The fraudulent prescriptions were purportedly written by a physician whose identity is known to the parties (the Physician).   However, the Physician did not sign or authorize the prescriptions.   Rather, beginning in approximately May 2012, the defendant, who is not a physician, obtained prescription pads in the Physician's name and began writing prescriptions for, among other things, oxycodone using forgeries of the Physician's signature.   The defendant and others provided hundreds of fraudulent prescriptions purportedly signed by the Physician to various individuals to purchase large quantities of oxycodone from various pharmacies.   The defendant typically paid the runners in cash or in pills to fill the prescriptions and the runners turned some or all of the pills over to the defendant or a cohort.   The defendant then sold the pills to others, including street-level drug

dealers.   In short, the defendant recklessly and greedily fueled the oxycodone epidemic for personal gain and created significant risk to the public.

The defendant's conduct demonstrates that he is a danger to the community.   In addition, based on, among other things, the possible sentence defendant could receive upon conviction, the defendant is a serious risk of flight.   Accordingly, defendant must be detained pre-trial because no less restrictive conditions will assure the safety of the community or his appearance in court. Because no condition or combination of conditions will reasonably assure the safety of the community or defendant's appearance as required, the government moves pursuant to Title 18, United States Code, Sections 3142(e) and (f) for a detention hearing and pretrial detention of the defendant.

## I.      THE LAW

The government may move for detention in any case that, among other things, involves an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. § 801 *et. seq.*).   18 U.S.C. § 3142(f)(1)(C).   Moreover, in such a case, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community.   18 U.S.C. § 3142(e)(3)(A).   This case involves, among other things, a conspiracy to distribute oxycodone, in violation of 21 U.S.C. § 846.   The statutory maximum sentence for a conspiracy to distribute oxycodone, a Schedule II controlled substance, is 20 years.   21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C).   Accordingly, the presumption applies to this case and, as is discussed in detail below, cannot be overcome by the defendant.

## II.    THE FACTS

In support of this motion, the government makes the following representations and proposed findings of fact:

### A.    Probable Cause and The Evidence in This Case

1.    There is probable cause to believe that the defendant has violated Title 18, United States Code, Section 371 (conspiracy) and Section 1347 (health care fraud), as well as Title 21, United States Code, Section 846 (conspiracy to distribute oxycodone) and Section 841(a)(1) (possession of oxycodone with intent to distribute) as charged in the indictment.

2.    The evidence in this case is strong and, with respect to the drug trafficking charges, includes, among other things, (a) numerous on-the-record interviews of various defendants and other co-conspirators detailing the oxycodone conspiracy and defendant Michael Milchin's role as the organizer and leader of the scheme; (b) oxycodone prescriptions in the defendants' names, which were obtained by subpoena from various pharmacies, as well as signature logs and photocopies of driver's licenses, which were sometimes proffered by the defendants as identification when they filled the fraudulent prescriptions; (c) testimony from the Physician that the signatures on the oxycodone prescriptions were not the Physician's genuine signature and that the Physician did not treat or issue any prescriptions to any of the defendants or other co-conspirators; and (d) evidence regarding how defendant Michael Milchin obtained the prescription pads in question.

### B.    Danger to the Community

The defendant first came to the government's attention for his involvement in the health care fraud scheme that is the subject of Counts One through Six of the indictment.   The defendant

was business manager at a chiropractic office and used his position there to fraudulently bill health insurers for chiropractic treatments that were never rendered. Once the health insurers caught on to the scheme and the defendant could no longer profit from it, he moved on to a far more dangerous and cunning scheme, using the chiropractic office as a front for drug trafficking.

As explained in the indictment, the defendant fraudulently obtained hundreds of thousands of oxycodone (30 mg) pills and sold them to addicts and drug dealers without regard to the consequences to the end-users or the public at large. Moreover, many of the individuals who filled the fraudulent prescriptions at the defendant's direction were drug users and addicts themselves. The defendant preyed on their addictions by offering them a cut of the oxycodone pills or cash in exchange for filling the fraudulent prescriptions. The defendant also offered these individuals additional pills or money if they recruited yet others to fill fraudulent prescriptions. By exploiting the intensely addictive properties of oxycodone, the defendant engaged in a reckless scheme that was shockingly easy to orchestrate and execute. While this particular scheme appears to have ended in or around March 2015, the defendant has demonstrated extreme disregard for the safety of others and a brazen disrespect for the law. In addition, the defendant has demonstrated a propensity to move from one scheme to another. If the defendant is not detained, there can be no assurance that the defendant will not engage in drug trafficking or other dangerous criminal activity.

In addition, it is the government's understanding that the defendant possesses at least one firearm. It is also the government's understanding that the defendant threatened at least one co-conspirator for non-compliance with the defendant's demands, reportedly stating on more than one occasion that he would send people to injure the co-conspirator. This conduct suggests that the defendant is a dangerous person who could pose a threat to witnesses in this case.

Accordingly, the defendant cannot overcome the presumption that he is a danger to the community and he should be detained pending trial.

    **C.**    **Risk of Flight**

The defendant also poses a serious risk of flight. If convicted on all counts charged in the indictment, the defendant faces a total statutory maximum sentence of 375 years in prison. Using a conservative calculation, the government estimates that the defendant's offense level is 36. The defendant's criminal history category is I. His guideline range is estimated to be 188-235 months' imprisonment. The likelihood of a very substantial prison term gives the defendant a strong incentive to flee.

Moreover, the defendant's ties to the Eastern District of Pennsylvania are limited, consisting mainly of a wife with whom the defendant is reportedly often estranged and two children. The defendant's other family members are located outside this district, including in New York. In addition, the defendant has a history of substance abuse and of regular travel outside the United States. It is also noteworthy that the defendant's scheme appears to have generated significant sums of cash, which has not been accounted for and which may be available to the defendant to finance his escape. Given these facts, the defendant cannot overcome the presumption that he is a risk of flight.

**III.**    **CONCLUSION**

When all these factors are viewed in light of the substantial evidence against defendant and the sentence he faces if convicted, it is clear that no condition or combination of conditions will reasonably assure the presence of the defendant's as required or the safety of the community.

WHEREFORE, the government respectfully submits that its Motion for Defendant's Pretrial Detention should be GRANTED.

Respectfully submitted,

LOUIS D. LAPPEN
*Acting United States Attorney*

*s/ Mary Kay Costello*
MARY KAY COSTELLO
*Assistant United States Attorney*

Dated:   June 1, 2017

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | **CRIMINAL NO. 17-284** |
| MICHAEL MILCHIN | : | |

**PRETRIAL DETENTION ORDER**

AND NOW, this        day of June, 2017, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

      (a)    the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

      (b)    the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) because:

      1.    There is probable cause to believe that the defendant has violated, among other statutes, Title 21, United States Code, Section 846 (conspiracy to distribute oxycodone) and Title 21, United States Code, Section 841(a)(1) (possession of oxycodone with intent to distribute) as charged in Count 7 and Counts 21 through 35 of an indictment unsealed on May 30, 2017.

2.     The evidence in this case is very strong and includes, among other things, (a) on-the-record interviews of co-conspirators detailing the oxycodone conspiracy and defendant Michael Milchin's role as the organizer and leader of the scheme; (b) oxycodone prescriptions in the co-conspirators' names, as well as signature logs and photocopies of driver's licenses, which were sometimes proffered by the co-conspirators as identification when they filled the fraudulent prescriptions; (c) testimony from the Physician that the signatures on the oxycodone prescriptions were not the Physician's genuine signature and that the Physician did not treat or issue any prescriptions to any of the defendants or other co-conspirators; and (d) evidence regarding how defendant Michael Milchin obtained the prescription pads in question.

3.     The statutory maximum sentence for conspiracy to distribute oxycodone, a Schedule II controlled substance, is 20 years' imprisonment, a mandatory minimum 3 years to lifetime supervised release, a fine of $1,000,000, and a special assessment of $100.   The statutory maximum sentence for each count of possession of oxycodone with intent to distribute is 20 years' imprisonment, a mandatory minimum 3 years to lifetime supervised release, a fine of $1,000,000, and a special assessment of $100.   The government estimates defendant's base offense level to be 36, criminal history category is I.   His guideline range is 188 to 235 months' imprisonment without the possibility of parole.   Accordingly, the defendant has a substantial incentive to flee.

4.     The strength and nature of the case against the defendant, combined with the strong likelihood that the defendant will be incarcerated for a significant period of time without the possibility of parole, establishes the defendant's danger to the community and increases the high risk that the defendant will not appear as required by the Court.

Therefore, IT IS **ORDERED** that the defendant be committed to the custody of the

Attorney General for confinement in a correction facility separate, to the extent practicable, from

persons awaiting or serving sentences or being held in custody pending appeal; that the defendant

be afforded reasonable opportunity for private consultation with counsel; and that, on order of a

Court of the United States, or on request of an attorney for the government, the person in charge

of the corrections facility in which the defendant is confined deliver the defendant to a United

States Marshal for the purpose of an appearance in connection with a court proceeding.


**BY THE COURT:**


_____
**HONORABLE TIMOTHY R. RICE**
*United States Magistrate Judge*
*Eastern District of Pennsylvania*

## CERTIFICATE OF SERVICE

I certify that a copy of the *Government's Motion for Pretrial Detention and Proposed Order* was served by electronic filing on the following defense counsel:

**LOUIS R. BUSICO, ESQUIRE**
133 N. State Street
Newtown, Pennsylvania 18940
*Counsel for Defendant Michael Milchin*

_/s/ Mary Kay Costello_
MARY KAY COSTELLO
*Assistant United States Attorney*

Date:   June 1, 2017