IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 17-284-1 |
| MICHAEL MILCHIN | : | |

**GOVERNMENT'S PLEA MEMORANDUM**

**I.     INTRODUCTION**

On or about May 23, 2017, defendant Michael Milchin was charged by indictment with one count of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 371, as well as five counts of health care fraud, in violation of 18 U.S.C. § 1347.   The health care fraud charges arose from the defendant's involvement in a scheme to defraud health insurers through Central Bucks Health Associates (CBHA), a chiropractic office run by John Vira, charged separately, and the defendant in which Vira and Milchin billed the insurers more than $700,000 for chiropractic services that were never rendered.

In addition, defendant Milchin and thirteen co-defendants were charged with conspiracy to distribute oxycodone, in violation of 21 U.S.C. § 846.   Four other co-conspirators were charged elsewhere.   Defendant Milchin was also charged with fifteen counts of possession of oxycodone with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C).   The charges arose from the defendant's organization and leadership of an oxycodone distribution ring in which various co-conspirators, including the defendant, obtained large quantities of oxycodone from pharmacies using fraudulent prescriptions.

1

The defendant, through counsel, has indicated a desire to plead guilty to the indictment. There is no guilty plea agreement in this case. A change of plea hearing is scheduled for February 9, 2018.

## II. ELEMENTS OF THE OFFENSES

### A. Conspiracy

To establish a violation of Section 371 (conspiracy), the government must prove the following elements beyond a reasonable doubt:

(1) Two or more persons agreed to commit a crime against the United States and/or to defraud the United States;

(2) The defendant was a party to the agreement;

(3) The defendant must have known of the conspiracy and have knowingly and intentionally chosen to participate in it; and

(4) At least one of the persons must have committed an overt act in furtherance of the object of the conspiracy.

### B. Health Care Fraud

To establish a violation of Section 1347 (health care fraud), the government must prove the following elements beyond a reasonable doubt:

(1) The defendant knowingly and willfully executed or attempted to execute a scheme or artifice;

(2) To defraud a health care benefit program or to obtain by false or fraudulent pretenses any money or property under the custody or control of a health care benefit program;

(3) In connection with the delivery or payment for health care benefits, items or services.

### C. Conspiracy to Distribute Oxycodone

To establish a violation of 21 U.S.C. § 846 (conspiracy to distribute oxycodone), the government must prove the following elements beyond a reasonable doubt:

(1) That two or more persons agreed to distribute a controlled substance, in this case oxycodone;

(2) That the defendant was a party to or member of the agreement; and

(3) That the defendant joined the agreement or conspiracy knowing of its objective to distribute a controlled substance and intending to join together with at least one other alleged conspirator to achieve that objective; that is, that the defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve that objective.

### D. Possession of Oxycodone with Intent to Distribute

To establish a violation of 21 U.S.C. § 841(a)(1) (possession of oxycodone with intent to distribute), the government must prove the following elements beyond a reasonable doubt:

(1) That the defendant possessed a mixture and substance containing a controlled substance;

(2) That the defendant possessed the controlled substance knowingly or intentionally;

(3) That the defendant intended to distribute the controlled substance; and

(4) That the controlled substance was oxycodone.

## III. MAXIMUM PENALTIES

The statutory maximum penalty for conspiracy, in violation of 18 U.S.C. § 371 (Count 1), is 5 years' imprisonment, a $250,000 fine, a 3-year term of supervised release, and a $100 special assessment. The statutory maximum penalty for health care fraud, in violation of 18 U.S.C. § 1347 (Counts 2-6), is 10 years' imprisonment, a 3-year period of supervised release, a

$250,000 fine, and a $100 special assessment   The statutory maximum penalty for conspiracy to distribute oxycodone, a Schedule II controlled substance, in violation of 21 U.S.C. § 846 (Count 7), is 20 years' imprisonment, a mandatory minimum 3 years to lifetime supervised release, a fine of $1,000,000, and a $100 special assessment.   The statutory maximum penalty for possession of oxycodone with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Counts 21-35), is 20 years' imprisonment, a mandatory minimum 3 years to lifetime supervised release, a fine of $1,000,000, and a $100 special assessment.

The total statutory maximum sentence that the defendant faces if convicted is 375 years' imprisonment, a mandatory minimum 3 years to lifetime supervised release, a fine of $17.5 million, and a $2,200 special assessment.

### IV.    FACTUAL BASIS FOR PLEA

If this case were to proceed to trial, the government would be able to prove each element of the charged offenses beyond a reasonable doubt.   In summary, the government would prove the following facts:

#### A.    The Health Care Fraud Conspiracy

John Vira, charged elsewhere, a chiropractor licensed to practice in the Commonwealth of Pennsylvania, was the owner of Central Bucks Health Associates ("CBHA"), a chiropractic office located in the Eastern District of Pennsylvania.   In approximately June 2010, Vira began working with defendant Michael Milchin.   Milchin told Vira that he could bring new patients to the practice.   Vira agreed to bring Milchin in as the business manager of CBHA.   In addition to bringing in new patients, Milchin was responsible for handling billing and other financial matters. Vira was responsible for treating patients and maintaining patient files.   Vira agreed to pay Milchin 50% of revenue after overhead and other expenses were paid.

4

Shortly after Vira began working with Milchin, Milchin and Vira agreed to begin submitting extra claims for reimbursement to insurance companies to increase CBHA's revenue. For example, if a patient came in once a week, they agreed to bill the insurance company for a second weekly visit that did not actually take place. Subsequently, on hundreds of occasions from approximately June 2010 through June 2012, Milchin, with Vira's knowledge and agreement, submitted, and caused to be submitted, fraudulent claims for reimbursement to health care benefit programs, including Independence Blue Cross ("IBC") and Aetna Inc. ("Aetna"), that, among other things, were supported by false and fraudulent representations that Vira had treated each beneficiary on each date billed, when in fact he had not.[1] In total, Milchin and Vira submitted, or caused to be submitted, approximately $721,800 in fraudulent billings to IBC and Aetna on behalf of CBHA and Milchin and Vira received approximately $138,196 in fraudulent reimbursements from those claims.[2]

To hide the fraudulent billings, Vira wrote fake treatment notes in patient charts to make it seem as if the beneficiaries were treated on particular claimed dates of service when, in fact, they were not. In a further attempt to hide the fraud and to keep the fraud proceeds coming, Vira made false statements to IBC and submitted to IBC some of the patient files that he had falsified in an attempt to support fraudulent claims that had previously been submitted to IBC on behalf of CBHA.

---

[1] Specific examples of the false billing are listed in paragraph 12 of Count One of the indictment.
[2] From approximately June 2010 through June 2012, Milchin knowingly and willfully submitted approximately $676,315 in fraudulent billings to IBC on behalf of CBHA. CBHA was paid approximately $132,025 on those fraudulent claims. Similarly, Milchin knowingly and willfully submitted approximately $45,485 in fraudulent billings to Aetna on behalf of CBHA. CBHA was paid approximately $6,171 on those fraudulent claims.

### B. The Oxycodone Conspiracy

From approximately May 2012 until approximately March 2015, defendant Michael Milchin conspired with several individuals, known and unknown, to fill hundreds of fraudulent prescriptions for controlled substances, namely oxycodone, a Schedule II controlled substance, for the purpose of redistribution to others, including street-level dealers. The fraudulent prescriptions were purportedly written by a physician whose identity is known to the parties (the Physician). However, the Physician did not sign or authorize the prescriptions. Rather, beginning in approximately May 2012, Milchin, who is not a physician, obtained prescription pads in the Physician's name and Milchin and others began writing prescriptions for, among other things, oxycodone using forgeries of the Physician's signature.

Michael Milchin and other co-conspirators filled, and recruited numerous other individuals to fill, the forged prescriptions at various pharmacies in the Eastern District of Pennsylvania.[3] The individuals who filled the fraudulent prescriptions turned the pills over to Milchin, or other individuals acting on Milchin's behalf, and were paid in cash or with a portion of the fraudulently obtained pills. Milchin, in turn, provided large quantities of the fraudulently obtained pills to other co-conspirators to sell through street-level drug deals.

To avoid detection and to assure a continuous supply of oxycodone, Michael Milchin arranged for a telephone number under his control to be imprinted on the fraudulent oxycodone prescriptions. Milchin then fielded, or had others, including Lisa Mack, charged elsewhere, field telephone calls from pharmacies attempting to contact the purported Physician's office to verify the prescriptions. Milchin and Mack pretended to work at the Physician's office and confirmed the information written on the fraudulent prescriptions, including the names, dates of birth, and

---

[3] The specific oxycodone prescriptions filled by the defendant in connection with the conspiracy are listed in ¶ 1 of the overt acts section of Count 7 of the indictment. The specific prescriptions filled by Milchin's co-defendants are listed in ¶¶ 2-18 of the overt acts section of Count 7 of the indictment.

purported diagnostic codes for the individuals filling the prescriptions. Thus, Milchin was able to make it seem as if the prescriptions were legitimate when, as he well knew, they were not.

                Respectfully Submitted,

                LOUIS D. LAPPEN
                United States Attorney


                 s/Mary Kay Costello
                MARY KAY COSTELLO
                Assistant United States Attorney

Date: February 5, 2018

# **CERTIFICATE OF SERVICE**

I certify that on this day I caused a copy of the Government's Plea Memorandum to be served by email and first class mail on the following:

>Arkady Bukh
>Bukh Law Firm, PLLC
>1123 Avenue Z
>Brooklyn, NY 11235
>
>Lonny Fish, Esq.
>1500 Walnut Street, Suite 2000
>Philadelphia, PA 19102
>
>*Counsel for Defendant Michael Milchin*

>*/s/ Mary Kay Costello*
>MARY KAY COSTELLO
>Assistant United States Attorney

February 5, 2018