### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

MICHAEL MILCHIN

CRIMINAL ACTION
NO. 17-284-1

**PAPPERT, J.**                                                  **July 21, 2022**

### <u>MEMORANDUM</u>

Michael Milchin was charged in a single indictment for his roles in two criminal enterprises.  First, he masterminded an Oxycodone-trafficking ring that distributed hundreds of thousands of pills, which Milchin and his coconspirators obtained by filling fraudulent prescriptions at many pharmacies.  Milchin also defrauded Independence Blue Cross and Aetna of more than $130,000 while working as a chiropractor's business manager by submitting fictitious insurance claims for medical care that was never provided.

Milchin pleaded guilty three days before trial to all twenty-two counts against him.  At Milchin's change of plea hearing, he and the Court engaged in a thorough colloquy after which the Court concluded Milchin's plea was knowing, voluntary and intelligent.

The Court subsequently sentenced Milchin to 168 months' incarceration, the high end of his advisory guideline range.  In doing so, it considered, *inter alia*, his attorney's detailed sentencing memorandum, numerous objections to the Presentence Investigation Report, extensive oral argument at the sentencing hearing and testimony from two witnesses, Milchin's wife and mother.

1

Milchin now alleges his attorney, Lonny Fish, provided constitutionally ineffective assistance of counsel in connection with his guilty plea and sentencing. The Court denies Milchin's Petition because his claims are foreclosed by his guilty plea colloquy and counsel's advocacy at sentencing.

I

A

On May 23, 2017, the Grand Jury returned an indictment charging Milchin with one count of conspiracy to commit health care fraud in violation of 18 U.S.C. § 371 (count one) and five counts of health care fraud in violation of 18 U.S.C. § 1347 and aiding and abetting in violation of 18 U.S.C. § 2 (counts two through six). (ECF 1.) Milchin was also charged with one count of conspiracy to distribute Oxycodone in violation of 21 U.S.C. § 846, along with thirteen codefendants (count seven), and fifteen counts of possession of Oxycodone with intent to distribute in violation of 21 U.S.C. § 841 and aiding and abetting in violation of 18 U.S.C. § 2 (counts twenty-one through thirty-five). (*Id.*)[1] On November 15, 2017, Fish entered his appearance as Milchin's counsel. (ECF 220.)[2]

Three days before Milchin's trial was to begin, he pleaded guilty to all counts against him. (Min. Entry, ECF 264.) Although the Government proposed a written plea agreement, Milchin chose to plead open to the indictment. (Pet. 6–7, ECF 493.)

At the change of plea hearing, Milchin stated he fully understood the nature and consequences of the proceeding, that he discussed the charges with counsel and that he

_____

[1]     The Court presented the case's facts in detail in its July 7, 2017 memorandum. (ECF 121 Part I.)
[2]     Louis Busico previously represented Milchin. (ECF 41.)

2

was satisfied with Fish's representation.  (Change of Plea Hr'g Tr. 8:12–9:2, 24:22–25:1.)

Milchin also said he and his lawyer discussed the sentencing guidelines and he understood that the Court, in determining Milchin's sentence, would consider the guidelines along with the factors under 18 U.S.C. § 3553(a).  (*Id.* at 13:19–14:19.)  Moreover, the Court explained the guidelines were advisory, did not bind it and that it would ultimately determine how they applied in Milchin's case.  (*Id.* at 23:5–14.)  And the prosecutor recited the maximum punishment Milchin could receive for his offenses, including 375 years' imprisonment.  (*Id.* at 21:14–22:18.)

Milchin stated he reviewed and discussed the indictment with counsel and he understood the charges, which the Court recited, against him.  *See* (*id.* at 3:1–16, 8:18–9:6).  Milchin also acknowledged that by pleading guilty, he was giving up his right to challenge the charges.  (*Id.* at 9:11–15, 11:6–11.)  He fully admitted the facts forming the basis of his plea and acknowledged the Court could use those facts in determining his sentence.  (*Id.* at 17:10–21:14.)  Milchin also said no one promised him or led him to believe he would receive a particular sentence.  (*Id.* at 24:9–11.)

Ultimately, Milchin said his guilty plea was his decision, made of his own free will.  (*Id.* at 25:13–15.)  Neither defense counsel nor the prosecutor had any doubt about Milchin's competence to enter this plea or that he was doing so knowingly, voluntarily and intelligently.  *See* (*id.* at 26:16–27:5).  The Court similarly found Milchin was competent to enter an informed plea of guilty and that he did so knowingly, voluntarily and intelligently.  (*Id.* at 29:18–24.)

B

1

Prior to Milchin's sentencing, Fish filed a detailed memorandum with nearly fifty pages of exhibits, one of which was a list of thirty-three objections to the PSR. (ECF 298.)  Among other things, counsel argued that the nature of Milchin's offenses, his background, friends and family relationships and employment history counseled in favor of a below-guidelines sentence.  (*Id.* at 2, 14–15.)  Counsel objected to the PSR's recommended offense level and argued for a downward variance based on the § 3553(a) factors.  (*Id.* at 11–13, 16–18.)  Counsel also stressed that when determining his sentence, the Court should consider his client's own Oxycodone addiction.  *E.g.*, (*id.* at 4–7).

The Court sentenced Milchin to concurrent sixty-month terms on count one, 120 months on counts two through six, and 168 months on counts seven and twenty-one through thirty-five.  (Judgment 2, ECF 297.)  Milchin's total sentence thus was 168 months' imprisonment, the high end of the guideline range.  (Sentencing Hr'g Tr. 60:9–21, 112:3–5.)  Milchin's offense level for purposes of his advisory guideline range was determined in large part by the Oxycodone amount in the indictment.  (*Id.* at 29:2–30:14, 52:5–54:14, 108:16–109:5.)

At Milchin's sentencing hearing, Fish emphasized the importance of the Court understanding the "whole entire picture" of his client, including the nature of his involvement relative to that of his co-defendants and how his Oxycodone use "affected everything" in his life.  (*Id.* at 17:1–4, 36:11–12.)  Counsel also argued Milchin did not commit violent crimes, had no criminal history and could again become a productive

4

member of society given his intelligence and "high functioning" nature. (*Id.* at 15:20–21, 92:24–93:16.)

Fish had numerous objections to the PSR and contended Milchin's offense level should be reduced by two levels for clearly demonstrating acceptance of responsibility and an additional level for doing so timely, notwithstanding his eleventh-hour guilty plea. (*Id.* at 14:6–48:7, 36:16–20, 58:12–59:14); USSG § 3E1.1. The Court granted the full three-level reduction. (Sentencing Hr'g Tr. 59:16–60:6.)

Counsel argued the Court should vary downward under the § 3553(a) factors primarily because of Milchin's addiction to Oxycodone and subsequent rehabilitation. (*Id.* at 80:9–15.) He also called Milchin's wife and mother as witnesses and submitted numerous letters, photos and medical records. (*Id.* at 63:8–101:9); (Def's Sentencing Memo Exs. B–D.) Milchin also stated he "never hurt anybody" except himself and his family, that he "fell" into the opioid epidemic and denied making a lot of money through the scheme he led. (*Id.* at 103:23–104:25, 106:8–16, 23–24.)

After careful consideration and a thorough explanation, the Court decided not to vary downward. While crediting counsel's argument that Milchin's addiction took control of him and commending him for overcoming it, the Court found the addiction was a "double-edged sword" and that Milchin didn't fall into the opioid epidemic but rather perpetuated and profited off it while feeding others' addictions. (Sentencing Hr'g Tr. 95:20–25, 113:1–7, 113:25–114:3; PSR ¶ 153.) The Court also concluded, based in part on Milchin's allocution, that he showed no remorse or accepted any responsibility for the magnitude and effects of his crimes. (*Id.* at 113:6–9, 21–22.)

In June of 2018, Milchin appealed his sentence, and the Third Circuit affirmed. (Nots. of Appeal, ECF 313, 346; Third Circuit Dkt. 18-2247, Aug. 19, 2020 Op. & Judgment, ECF 99, 100.)

2

On November 5, 2021, Milchin moved *pro se* to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.  (Pet.)  Milchin alleges, in claims one through four respectively, that Fish provided ineffective assistance of counsel in violation of the Sixth Amendment when he (1) allegedly accepted a plea deal on Milchin's behalf without his knowledge, (2) gave Milchin incorrect information about his ability to contest the charged Oxycodone amount at sentencing, (3) was not mentally healthy while representing Milchin because of personal issues and (4) performed inadequately at his sentencing.  (*Id.*)

II

A

Section 2255(a) of Title 28 of the United States Code permits a prisoner serving a federal sentence to move the sentencing court to vacate, set aside, or correct his sentence when (1) the sentence violated the Constitution or federal law; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  The petitioner bears the burden of showing his § 2255 petition has merit and must clear a significantly higher hurdle than on direct appeal.  *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005); *United States v. Cleary*, 46 F.3d 307, 310 (3d Cir. 1995).

The court must hold an evidentiary hearing for a § 2255 petition alleging ineffective assistance of counsel unless the motion, case filings and record conclusively show the prisoner is not entitled to relief.  28 U.S.C. § 2255(b).  Under the requisite two-step inquiry, the court must consider as true the petitioner's nonfrivolous factual claims and determine based on the existing record whether those claims conclusively fail to demonstrate ineffective assistance.  *United States v. Arrington*, 13 F.4th 331, 334 (3d Cir. 2021).

B

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel, and counsel can deprive a defendant of this right by failing to render adequate legal assistance.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on an ineffective assistance claim, the petitioner must show (1) counsel performed deficiently and (2) this deficiency prejudiced his defense.  *Id.* at 687.  A court can analyze these prongs in any order and need not address both if petitioner makes an insufficient showing on one.  *Id.* at 697; *Gaines v. Superintendent Benner Twp. SCI*, 33 F.4th 705, 712 (3d Cir. 2022).  *Strickland*'s two-part test is a high bar to surmount. *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

The standard for attorney performance is objective reasonableness under prevailing professional norms when considering all the circumstances.  *Strickland*, 466 U.S. at 687–88, 690; *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 850 (3d Cir. 2017).  Judicial review of counsel's performance is highly deferential.  *Strickland*, 466 U.S. at 689.  The court cannot be distorted by hindsight, must evaluate counsel's conduct from his perspective at the time and strongly presume his conduct is in the

7

wide range of reasonable assistance. *Id.*; *United States v. Scripps*, 961 F.3d 626, 632 (3d Cir. 2020).

As for prejudice, the petitioner must show a reasonable probability that, but for counsel's errors, the proceeding's result would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability is one that undermines confidence in the outcome. *Id.*

C

The Sixth Amendment's guarantee of the effective assistance of counsel applies during plea negotiations. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). *Strickland*'s two-part test governs ineffective assistance claims stemming from guilty pleas, in which there is a fundamental interest in finality. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

To prove prejudice on a claim that counsel provided faulty advice during plea negotiations, the criminal defendant must show there is a reasonable probability that, but for counsel's advice, he would not have pleaded guilty and insisted on proceeding to trial. *Hill*, 474 U.S. at 59; *Lafler*, 566 U.S. at 163. In doing so, the defendant cannot merely make a "bare allegation" he would have gone to trial if not for counsel's deficient advice. *Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995). Additionally, erroneous sentencing information allegedly provided by counsel can be corrected by a plea colloquy that accurately stated the criminal defendant's potential sentence. *United States v. Shedrick*, 493 F.3d 292, 300 (3d Cir. 2007).

III

Milchin's claims fail because he cannot show both deficient performance and prejudice for any of them. *See Strickland*, 466 U.S. at 687.

8

A

Milchin argues in claim one that Fish "accepted a plea deal" on his behalf without his knowledge and with the "wrong information." (Pet. 4–5.) He asserts counsel told him he accepted this purported deal because it provided Milchin with an "extra point reduction" that was "supposed to be" in addition to the total three-point reduction available for timely acceptance of responsibility. (*Id.* at 5.) According to Milchin, Fish was mistaken and misinformed him that this "fourth" point was available when it was not. (*Id.*) Consequently, Milchin contends there was no benefit from the alleged deal Fish accepted for him, and he would not have pleaded guilty if he knew this. (*Id.*)

First of all, Milchin refers incorrectly to a "plea deal"; there wasn't one. He entered an open plea with no written plea agreement, even though the Government proposed one in a January 23, 2018 email to Fish. (Pet. 6–7); *see also, e.g.*, (Plea Memorandum 2, ECF 263; Sentencing Memorandum 2, ECF 293; Resp. to Mot. to Reduce Sentence 2, ECF 442). Milchin did not object or question the Court's statement at his sentencing hearing that there was no plea agreement. (Sentencing Hr'g Tr. 4:4.) Fish could not have been ineffective for "agreeing" to something that never existed. *See Strickland*, 466 U.S. at 687.

Moreover, counsel knew the total number of points that could be deducted from Milchin's offense level for acceptance of responsibility. The applicable guideline provides, under subsection (a), for a two-point reduction if the defendant clearly demonstrates acceptance of responsibility for his offenses and, under subsection (b), one additional point if, among other requirements, the defendant timely notifies the

Government he intends to plead guilty.  USSG § 3E1.1.  In a January 2, 2018 email to Fish, the prosecutor clarified that a potential "additional one-level reduction" under subsection (b) would be added to the two-level reduction under subsection (a).  (Govt's Resp. to Pet. Ex. C.)  She also told Fish in the January 23, 2018 email that the Government proposed a total "three-level decrease" (composed of the two levels under subsection (a) and one level under subsection (b)) for acceptance of responsibility.  (Pet. 7.)

Additionally, at Milchin's sentencing hearing, Fish told the Court he would argue his client deserves the "extra point" under USSG § 3E1.1.  (Sentencing Hr'g Tr. 15:11–13.)  The Court responded that "it will be three points," to which Fish replied, "Three—yes."  (*Id.* at 14:15.)  If, as Milchin contends, Fish believed Milchin could receive four points, Fish would have disputed the Court's response—or Milchin would have spoken up.  Milchin attempts to use this exchange as proof of Fish's lack of knowledge about the point total, but it shows to the contrary that everyone understood that Milchin's acceptance of responsibility and timely notification of his intention to plead guilty (again notwithstanding the late notice) was worth a total of three points. (Pet. 5.)  Further, when the Court ruled it would reduce Milchin's offense level by "three points," Fish only said he "appreciate[d] that" without disagreeing or requesting an additional point.  (*Id.* at 60:3–7.)

Even if Fish fed Milchin bad information, the Court corrected the error by engaging in a thorough colloquy with Milchin at his change of plea hearing.  *See Shedrick*, 493 F.3d at 300.  In particular, the Court and prosecutor told Milchin the maximum sentences for his offenses, and both Milchin and his lawyer confirmed they

understood and agreed.  (Change of Plea Hr'g Tr. 21:14–23:1); *see United States v. Jones*, 336 F.3d 245, 254 (3d Cir. 2003).  The Court also stated the sentencing guidelines were advisory, didn't bind it and confirmed Fish adequately discussed them with Milchin.  (Change of Plea Hr'g Tr. 8:12–18, 13:14–17, 23:5–14.)  The Court further told Milchin that no matter what his lawyer or the Government believes the guidelines say, the Court would ultimately decide how they apply.  (*Id.* at 23:8–12.)  And Milchin confirmed no one promised him or led him to believe he would receive a particular sentence.  (*Id.* at 24:9–11); *see United States v. Mustafa*, 238 F.3d 485, 492 (3d Cir. 2001).

Finally, Milchin cannot show there is a reasonable probability he would have decided to go to trial if not for Fish's alleged erroneous advice that Milchin would have four, rather than three, points reduced from his offense level.  *See Hill*, 474 U.S. at 59.  Milchin contends that without this "additional benefit," pleading guilty would have been "completely pointless."  (Pet. 5.)  This is nothing more than a bare, unsupported—and, given the number of cooperating witnesses and extensive evidence, likely incorrect—allegation.  *See Parry*, 64 F.3d at 118.

## B

Milchin asserts in claim two that Fish made another "agreement" with the Government without informing Milchin regarding his offense level, this one based in large part on the Oxycodone amount listed in the conspiracy count of the indictment.  (Pet. 11.)  Milchin nonetheless contends Fish told him he could plead guilty and still challenge "all the drug amounts" at sentencing.  (*Id.*)  According to Milchin, however, Fish did not know the law governing this issue—namely, that Milchin, by pleading

11

guilty to the conspiracy count, accepted liability for the Oxycodone amount stated in the indictment and could no longer contest it. (*Id.*) The change of plea hearing refutes Milchin's claim.

Even if Fish was misinformed about Milchin's ability to challenge the Oxycodone amount and similarly confused Milchin, the Court corrected the error at the change of plea hearing. *See Strickland*, 466 U.S. at 694.

During the colloquy, Milchin stated he discussed the indictment with Fish, understood the charges against him and acknowledged he was waiving his right to challenge those charges. (Change of Plea Hr'g Tr. 8:18–9:6, 9:11–15.) The conspiracy count set forth Milchin's liability for the numerous pills distributed by he and his coconspirators. The indictment alleged Milchin was responsible for conspiring with many others over the course of roughly three years to fill hundreds of fraudulent Oxycodone prescriptions at various pharmacies for redistribution purposes. (ECF 1 Ct. 7 ¶¶ 6, 8.) Those who filled the sham prescriptions gave the pills to Milchin or others acting on his behalf in exchange for money or pills. (*Id.* at ¶ 9.) Milchin then provided large quantities of pills to his coconspirators for sale on the street. (*Id.* at ¶ 10.)

Crucially, the conspiracy count's overt acts section contained detailed tables listing the quantities and dosages of pills Milchin and his coconspirators fraudulently obtained, and the dates they obtained them. (*Id.* at 16–29.) For example, one table shows Milchin personally filled fictitious prescriptions for 120 30 mg Oxycodone pills four times between March of 2014 and May of 2014, and for 180 30 or 20 mg pills seventeen times between June of 2014 and March of 2015. (*Id.* at ¶ 1.)

Milchin also admitted to his plea's factual basis, which described the conduct underlying the conspiracy count. (Change of Plea Hr'g Tr. 19:7–20:19.) Moreover, his allocution at sentencing belies his *post hoc* argument that Fish led him to believe the Government would have to prove the Oxycodone amount at sentencing. (Pet. 11.) Milchin conceded the amount was proven and unchallengeable, stating he pleaded guilty to "everything" and that there is "no reason to recount numbers." (Sentencing Hr'g Tr. 102:5–7.)

To the extent Milchin argues his guilty plea was invalid—whether because of Fish allegedly misleading him about the extent of the reduction for acceptance of responsibility and timely notification to the Government, or his ability to contest the drug quantities at sentencing—his change of plea hearing indicates otherwise. To be valid, a guilty plea must be knowing, voluntary and intelligent. *Parke v. Raley*, 506 U.S. 20, 28–29 (1992); *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The criminal defendant must have a full understanding of what the plea connotes and its consequences. *Boykin v. Alabama*, 395 U.S. 238, 243–44 (1969). These standards were satisfied when Milchin pleaded guilty.

The Court questioned Milchin at length to ensure he completely understood the nature and consequences of his guilty plea. *See Boykin*, 395 U.S. at 243–44. Milchin told the Court he discussed the proceeding with Fish and was satisfied with counsel's representation. (Change of Plea Hr'g Tr. at 8:12–18, 24:22–25:1.) Milchin also said he was pleading guilty of his own free will. (*Id.* at 25:13–15.) Neither Fish nor the prosecutor contested the validity of Milchin's plea. *See* (*id.* at 26:16–27:10). Consequently, the Court found Milchin was changing his plea knowingly, voluntarily

and intelligently. *See* (*id.* at 29:18–24); *Parke*, 506 U.S. at 28–29; *Alford*, 400 U.S. at 31.

C

Milchin asserts in claim three that Fish's alleged personal issues—namely, divorce and child custody—impaired his ability to represent Milchin. (Pet. 13–14.) Milchin opines it is a "proven fact" that divorce and custody battles are traumatic experiences and can make a person feel "like his world is crumbling around" him. (*Id.* at 14.)

The Court can summarily dismiss Milchin's speculative, conclusory armchair psychology. *See United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000). Even if the Court were to assume counsel was having difficulties in his personal life and they negatively impacted his performance, Milchin fails to specify how this prejudiced him. *See Strickland*, 466 U.S. at 694.

Along with restating his fourth claim, addressed below, Milchin contends Fish "seemed out of it" at some unspecified meetings. (Pet. 14.) He also vaguely alludes to "public documents" that show his lawyer was "going thr[ough] a difficult time in his life." (*Id.*) These allegation fail to identify what proceeding Fish's allegedly deficient performance affected, let alone a substantial possibility that proceeding's result would have been different had he performed reasonably. *See Harrington v. Richter*, 562 U.S. 86, 112 (2011).

D

Milchin argues in claim four that at his sentencing his attorney seemed lost, acted like it was his first time in court and was completely ineffective, and that legal

14

representation "can[']t get much worse" than Fish's.  (Pet. 15–16.)  Milchin cites specific portions of the sentencing hearing transcript that allegedly illustrate counsel's missteps and also claims the entire transcript demonstrates his ineffectiveness.  (*Id.* at 16.) Milchin falls well short of satisfying the "highly demanding" standard to show a Sixth Amendment violation.  *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

Fish zealously represented Milchin both before and at sentencing.  *See Strickland*, 466 U.S. at 687–88, 690.  He filed a thorough sentencing memorandum and lodged thirty-three objections to the PSR.  (ECF 298.)  At the hearing, he argued numerous issues, including the myriad objections.  (Sentencing Hr'g Tr. 14:6–48:7, 36:16–20, 58:12–59:14.)  Counsel also argued for a downward variance based primarily on Milchin's Oxycodone addiction and subsequent rehabilitation.  In doing so, Fish called Milchin's wife and mother as witnesses and submitted voluminous medical records, letters and photos on Milchin's behalf.  (*Id.* at 63:8–107:9.)

The portions of the hearing Milchin relies on to demonstrate his lawyer's purported ineffectiveness do not come close to demonstrating Fish performed deficiently overall.  Many of them offer no support for Milchin's claim.  For example, Milchin points out that Fish correctly identified a typo in a table in the PSR showing the marijuana equivalent of the charged opioid amounts for purposes of calculating Milchin's offense level.  (*Id.* at 13:1–4; PSR ¶ 105.)  Another demonstrates Fish ably arguing for the downward variance.  (Sentencing Hr'g Tr. 99–100.)

In any event, the Court must presume counsel's strategic decisions, such as his manner of arguing for a reduced sentence, are reasonable and be highly deferential to them.  *Dunn v. Reeves*, 141 S.Ct. 2405, 2410 (2021) (per curiam); *Strickland*, 466 U.S. at

689–90.  Because Milchin fails to rebut that presumption, these decisions are "virtually unchallengeable." *Strickland*, 466 U.S. at 690–91.  While Milchin seems to believe otherwise, the Sixth Amendment doesn't guarantee criminal defendants representation that is perfect, only objectively reasonable.  *Strickland*, 466 U.S. at 687–88, 690.

Even if Fish did not meet that standard, Milchin cannot show a reasonable probability he received a longer sentence as a result.  *Strickland*, 466 U.S. at 687.  In fact, Milchin's sentence took into account "all necessary factors and alternatives." (Sentencing Hr'g Tr. 120:23–121:1.)  The Court conservatively determined his guideline range by considering only the Oxycodone amount listed in the indictment or stipulated to in his codefendants' plea agreements.  (*Id.* at 29:2–30:14, 52:5–54:14.)  The Court also decreased Milchin's offense level by three for acceptance of responsibility even though Milchin contested many issues to which he pleaded guilty and entered the plea only three days before trial.  Based on everything the Court saw, heard and read, Milchin did not truly accept responsibility for the scope and magnitude of his crimes, and it easily could have "knock[ed] those three points right off."  (*Id.* at 59:25–60:4.)

That the Court ultimately imposed a sentence at the high end of Milchin's guideline range does not indicate the sentence was harsh.  The Court rejected Fish's request for a downward variance after carefully considering his thorough argument based largely on Milchin's Oxycodone addiction.  The Court did not reach this conclusion because Fish's representation was deficient.  *Strickland*, 466 U.S. at 687. Indeed, the Court credited Fish's argument that Milchin's addiction turned him into someone he was not. (Sentencing Hr'g Tr. 95:20–25.)  It nonetheless did not grant a downward variance largely because, within the § 3553(a) framework, Milchin's crimes

and lack of remorse did not warrant it.  *See* (*id.* at 112:1–121:20).  In fact, they would have justified an upward variance.  (*Id.* at 118:25–119:9.)

IV

A § 2255 petitioner can appeal the denial of his claims only if he obtains a certificate of appealability.  28 U.S.C. § 2253(c)(1).  A district court cannot issue one unless the petitioner makes a substantial showing that his constitutional rights were denied.  § 2253(c)(2).  To do so, he must demonstrate reasonable jurists would find the court's evaluation of his constitutional claims wrong or debatable.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  A certificate of appealability is not warranted here because reasonable jurists would not debate the Court's ruling, and Milchin has not made a substantial showing that his Sixth Amendment rights were violated.

An appropriate order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.